## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          )
                                                ) Case No. 08-12606 (BLS)
VERASUN ENERGY CORPORATION, et al.,             )
                                                ) *Chapter 11*
                Debtors.[1]                     )
                                                ) Jointly Administered
                                                )
                                                ) **Related Docket Nos. 622, 879**

## ORDER (A) APPROVING THE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING CERTAIN RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] dated February 6, 2009 of the

above-captioned debtors and debtors-in-possession (the "Debtors") for entry of an order (the

"Order") (A) approving the sale (the "Sale") of certain of the Debtors' assets free and clear of all

liens, claims, encumbrances and interests (the "Interests"), except to the extent set forth in the

Asset Purchase Agreement (hereinafter defined), pursuant to Sections 105, 363 and 365 of title

11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"),

and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1]  The Debtors consist of: VeraSun Energy Corporation (EIN: 20-3430241); ASA OpCo Holdings, LLC (EIN: 68-0609122); US BioEnergy Corporation (EIN: 20-1811472); VeraSun Albert City, LLC (EIN: (20-2264707); VeraSun Albion, LLC (EIN: 55-0907221); VeraSun Aurora Corporation (EIN: 46-0462174); VeraSun BioDiesel, LLC (EIN: 20-3790860); VeraSun Bloomingburg, LLC (EIN: 55-0907224); VeraSun Central City, LLC (EIN: (55-0816855); VeraSun Charles City, LLC (EIN: 20-3735184); VeraSun Dyersville, LLC (26-3594945); VeraSun Fort Dodge, LLC (EIN: 42-1630527); VeraSun Granite City, LLC (EIN: 20-5909621); VeraSun Hankinson, LLC (20-2852457); VeraSun Hartley, LLC (EIN: 20-5381200); VeraSun Janesville, LLC (EIN: 20-4420290); VeraSun Linden, LLC (EIN: 55-0907228); VeraSun Litchfield, LLC (EIN: 20-8621370); VeraSun Marion, LLC (EIN: 20-3477343); VeraSun Marketing, LLC (EIN: 20-3693800); VeraSun Ord, LLC (75-3204878); VeraSun Reynolds, LLC (EIN: 20-5914827); VeraSun Tilton, LLC (EIN: 26-1539139); VeraSun Welcome, LLC (EIN: 20-4115888); VeraSun Woodbury, LLC (20-0647425).

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (hereinafter defined), as applicable.

Rules"); (B) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") identified by the Debtors and more fully described in that certain Asset Purchase Agreement dated February 6, 2009 (the "Asset Purchase Agreement") by and between the Debtors[3] and Valero Renewable Fuels Company, LLC (the "Purchaser") for the purchase of the Assets;[4] and (C) granting certain related relief; and the Debtors having determined that the highest and otherwise best offer for the Sale of the Assets submitted at the Auction was made by the Purchaser in the form of the Asset Purchase Agreement; and the Court having held a hearing on March 18, 2009 (the "Sale Hearing") to approve the Asset Purchase Agreement; and the Court having reviewed and considered (i) the Motion, (ii) the objections thereto, if any, (iii) the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and these Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby

## FOUND AND DETERMINED THAT:[5]

---

[3] Specifically, the Asset Purchase Agreement is between Valero and the following Debtor entities: (i) VeraSun Energy Corporation; (ii) VeraSun Aurora Corporation; (iii) VeraSun Charles City, LLC; (iv) VeraSun Fort Dodge, LLC, (v) VeraSun Hartley, LLC; (vi) VeraSun Welcome, LLC; (vii) VeraSun Reynolds, LLC; and (viii) VeraSun Marketing, LLC; (collectively, the "VSE Debtors").

[4] The "Assets" consist of substantially all of the assets of (i) VeraSun Aurora Corporation; (ii) VeraSun Charles City, LLC; (iii) VeraSun Fort Dodge, LLC; (iv) VeraSun Hartley, LLC; (v) VeraSun Welcome, LLC; (vi) VeraSun Reynolds, LLC; (vii) VeraSun Marketing, LLC, and (viii) the Qteros Shares (as defined in the Asset Purchase Agreement).

[5] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

2

A. **Jurisdiction and Venue**. The court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(B)(2)(a). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004 and 6006.

C. **Petition Date**. On October 31, 2008 (the "Petition Date"), VeraSun Energy Corporation ("VeraSun") and 24 of its subsidiaries and affiliates each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended.

D.     **Entry of Bid Procedures Order**.  On February 20, 2009 this

Court entered an order (the "Bid Procedures Order") (A) establishing bidding and auction

procedures (the "Bidding Procedures"); (B) approving proposed bid protections (the

"VSE Stalking Horse Break-Up Fee and Expense Reimbursement") to Valero in

accordance with the VSE Asset Purchase Agreement; (C) establishing procedures for the

Debtors to enter into stalking horse agreements (each, an "Additional Stalking Horse

Agreement") containing bid protections with respect to any additional stalking horse

bidders (the "Additional Stalking Horse Bidders") for the sale of all or a portion of the

Assets; (D) scheduling an auction (the "Auction") and sale hearing (the "Sale Hearing")

for the Sale of the Debtors' Assets; (E) permitting credit bidding pursuant to Bankruptcy

Code section 363(k); (F) establishing procedures for noticing and determining cure

amounts (the "Cure Amounts"); (G) approving the form and matter of notice of all

procedures, protections, schedules and agreements; and (H) granting certain related relief.

E.     **Compliance with Bid Procedures Order**.  As demonstrated by (i)

the testimony and other evidence proffered or adduced at the Sale Hearing, (ii) the

representations of counsel made on the record at the Sale Hearing, the Debtors have

marketed the Assets and conducted the sale process in compliance with the Bid

Procedures Order and the Auction was duly noticed and conducted in a non-collusive,

fair and good faith manner.  The Debtors and their professionals have actively marketed

the Assets and conducted the sale process in compliance with the Bid Procedures Order,

and have afforded potential purchasers a full and fair opportunity to make higher and

better offers.

F.     **Notice**.  As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale, the Assumption and Assignment Procedures (including the objection deadline with respect to any Cure Amount) and the assumption and assignment of the Assumed Contracts and the Cure Amounts has been provided in accordance with sections 102(l), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and in compliance with the Bid Procedures Order, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts or the Cure Amounts is or shall be required.

G.     **Corporate Authority**.  Each VSE Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Assets by the Debtors has been duly and validly authorized by all necessary corporate action of each of the VSE Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the VSE Debtors of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the VSE Debtors to consummate such transactions.

H.     **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been

5

afforded to all interested persons and entities, including; (i) the Office of the United States Trustee, (ii) counsel for the Purchaser, (iii) counsel for the Creditors' Committee; (iv) all entities known to have expressed an interest in a transaction with respect to the Assets during the past six months; (v) all entities known to have asserted any Interests in or upon the Assets; (vi) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (vii) all parties to Assumed Contracts; (viii) the United States Attorney's office (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; and (xi) all entities filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these Chapter 11 Cases.

      I.     **Sale in Best Interest**. Consummation of the Sale of the Assets at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

      J.     **Business Justification**. Sound business reasons exist for the Sale. Entry into the Asset Purchase Agreement constitutes each VSE Debtor's exercise of sound business judgment and such acts are in the best interests of each VSE Debtor, its estate, and all parties in interest. The Court finds that each VSE Debtor has articulated good and sufficient business reasons justifying the Sale. Such business reasons include, but are not limited to, the following: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets; and (iii) any plan would not have likely yielded as favorable an economic result.

K.    **Arms-Length Sale**.  The Asset Purchase Agreement was negotiated, proposed and entered into by the VSE Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the VSE Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

L.    **Good Faith Purchaser**.  The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.  The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

M.    **Consideration**.  The consideration provided by the Purchaser for the Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for the VSE Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

N.    **Free and Clear**.  The Debtors may sell the Assets free and clear of all Interests (other than Permitted Exceptions) because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied.  Those holders of Interests who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests who did

object fall within one or more of the other subsections of section 363(f) Bankruptcy Code.

        O.    **UBS Pay-Off Amount**. The lenders under the UBS Credit Facility are secured creditors of the VSE Debtors, holding valid liens, claims, interests and encumbrances in, on and against the UBS Cash Collateral and the UBS Prepetition Collateral (as defined in the UBS Cash Collateral Order), arising in connection with the UBS Credit Facility and that certain Amended Final Order Authorizing Use of Cash Collateral of, and Providing Adequate Protection to, UBS AG, Stamford Branch, Under 11 U.S.C. §§ 105, 361 and 363 [Docket No. 473] (as amended by further order of the Court, the "UBS Cash Collateral Order") and under which UBS holds an allowed secured claim, not subject to subordination and otherwise unavoidable for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, against the VSE Debtors for principal, accrued interest and reimbursable fees and expenses as of the date of the entry of this Order in an approximate amount of $96 million, plus interest, fees and reasonable expenses accrued after the date of this Order and while the obligations under the UBS Credit Facility remain outstanding (collectively, the "UBS Payoff Amount").

        P.    **VSE DIP Pay-Off Amount**. The lenders under the VSE DIP Facility (the "VSE DIP Lenders") are secured creditors of the VSE Debtors, holding valid liens, claims, interests and encumbrances in, on and against the VSE Debtors, their estates and property of the estates, arising in connection with the VSE DIP Facility and related loan, security, pledge and guaranty agreements, and under which the VSE DIP Lenders hold a claim, not subject to subordination and otherwise unavoidable for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, against the VSE

8

Debtors for principal, accrued interest and reimbursable fees and expenses as of the date of the entry of this Order in an amount of $204,518,594.94, plus interest, fees and reasonable expenses accrued after the date of this Order and while the obligations under the VSE DIP Facility remain outstanding (collectively, the "VSE DIP Payoff Amount").

Q.     **AgStar Complaint for Declaratory Judgment**. On December 23, 2008, AgStar Financial Services, PCA ("AgStar") filed that certain Complaint for Declaratory Judgment and Other Relief pursuant to which AgStar, *inter alia*, challenged the validity of certain liens upon the UBS Prepetition Collateral (as defined in the UBS Cash Collateral Order) and the UBS Cash Collateral (the "AgStar Litigation"). The AgStar Litigation is pending before this Court under Adversary Proceeding Number 08-51897.

R.     **Order Approving Debtors Motion for Allowance of Certain Intercompany Administrative Expense Claims**. On March 5, 2009, this Court entered that certain Order Approving Debtors' Motion for Allowance of Certain Intercompany Administrative Expense Claims (the "Intercompany Administrative Expense Order"). Pursuant to the Intercompany Administrative Expense Order, certain allowed administrative expense claims were granted to certain of the US BioEnergy Segment Debtors against VeraSun Marketing LLC in the aggregate amount of $14,756,000 (the "Intercompany Administrative Expense Claim Amount") relating to the transfer of ethanol and distillers grains.

S.     **Assumption of Executory Contracts and Unexpired Leases**. The (i) transfer of the Assets to the Purchaser and (ii) assignment to the Purchaser of the Assumed Contracts, will not subject the Purchaser to any liability whatsoever prior to the

Closing Date (defined below) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust, successor or transferee liability. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts is the best interests of the Debtors, their estates, and their creditors. The Assumed Contracts being assigned to the Purchaser are an integral part of the Assets being purchased by the Purchaser and, accordingly, such assumption and assignment of Assumed Contracts is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

T. **Cure/Adequate Assurance**. The Debtors have (i) cured, or have provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts within the meaning of 11 U.S.C. § 365(b)(1)(B). The Purchaser has provided adequate assurance of future performance of and under the Assumed Contracts within the meaning of 11 U.S.C. § 365(b)(1)(C).

U. **Prompt Consummation**. The Sale of the Assets must be approved and consummated promptly in order to preserve the value of the Assets.

10

Therefore, time is of the essence in consummating the Sale, and the VSE Debtors and the Purchaser intend to close the Sale as soon as possible.

V. **No Intentional Fraudulent Transfer**. The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

W. **Purchaser Not an Insider and No Successor Liability**. Immediately prior to the Closing Date, Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Purchaser and the Debtors. Pursuant to the Asset Purchase Agreement, Purchaser is not purchasing all of the VSE Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets, and Purchaser is not holding itself out to the public as a continuation of the VSE Debtors. The Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the VSE Debtors and/or the Debtors' estates, there is not substantial continuity between Purchaser and the VSE Debtors, there is no continuity of enterprise between the VSE Debtors and Purchaser, Purchaser is not a mere continuation of the VSE Debtors or the VSE Debtors' estates, and Purchaser does not constitute a successor to the VSE Debtors or the VSE Debtors' estates.

X. **Legal, Valid Transfer**. The transfer of the Assets to Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest Purchaser with all right, title, and interest of the VSE Debtors to the Assets free and clear of all Interests, except as set forth in the Asset Purchase Agreement.

11

Y. **Asset Purchase Agreement Not Modified**. The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects and the terms of the Order shall not modify the terms of the Asset Purchase Agreement.

Z. **Not a Sub Rosa Plan**. The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

It is therefore **ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The Motion is GRANTED and APPROVED in all respects.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the Sale of the Assets**

3. The Asset Purchase Agreement, substantially in the form attached hereto as Exhibit A, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

4. Pursuant to 11 U.S.C. § 363(b), the Sale of the Assets to the Purchaser free and clear of all Interests (except those

12

specifically permitted by the Asset Purchase Agreement), and the transactions contemplated thereby are approved in all respects.

5.     Except as otherwise specifically provided in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the VSE Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the VSE Debtors or any obligations of the VSE Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Assets prior to the Closing Date.

6.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale shall not affect the validity of the Sale to the Purchaser. The Purchaser is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

7.     As a good faith purchaser of the Assets, the Purchaser has not entered into an agreement with any other potential bidders at the Sale, and has not colluded with any of the other bidders,

13

potential bidders or any other parties interested in the Assets, and therefore neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

## Sale and Transfer of Assets

8.      Pursuant to 11 U.S. C. § 363(b), the VSE Debtors are hereby authorized and directed to sell the Assets to Purchaser and consummate the Sale in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including without limitation the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to Purchaser or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the VSE Debtors' obligations as contemplated by the Asset Purchase Agreement.

9.     Pursuant to 11 U.S.C. § 363 (b) and 363(f), the Assets shall be transferred to the Purchaser upon consummation of the Asset Purchase Agreement (the "Closing Date") free and clear of all Interests of any kind or nature whatsoever with all such Interests of any kind or nature whatsoever to attach (effective upon the transfer of the Assets to the Purchaser) to the proceeds of the Sale (the "Proceeds") with the same force, validity, priority and effect, if any, as the claims, liens, encumbrances, and interests formerly had against the Assets, if any, subject to the Debtors' ability to challenge the extent, validity, priority and effect of the Interests and subject to and as otherwise provided in any other order of this Court in these Chapter 11 Cases.

10.     On the Closing Date, this Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in such Assets to the Purchaser. On the Closing Date, and subject to section 365 of the Bankruptcy Code, this Order also shall be construed and constitute for any and all purposes a complete and general assignment of all right, title and interest of the Debtors and each bankruptcy estate to the Purchaser in Assumed Contracts.

11.     All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date.

15

12. Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the VSE Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the VSE Debtors, the Assets, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successor or assign, its property, or the Assets, such persons' or entities' Interest.

13. On the Closing Date of the Sale, each of the VSE Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Assets, if any, as such Interests may have been recorded or otherwise exist.

14. Subject to the terms and conditions of this Order, the transfer of the Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with all right, title, and interest of the VSE Debtors in and to the Assets free and clear of all Interests of any kind or nature whatsoever.

**Assumption and Assignment of Assumed and Assigned Contracts**

15.     Pursuant to 11 U.S.C. § 105(a) and 365, and subject to and conditioned upon the closing of the Sale, the VSE Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. § 365(b)(1) with respect thereto are hereby deemed satisfied, except that Northern Natural Gas Company shall be permitted to object to adequate assurance of future performance until March 31, 2009..

16.     The VSE Debtors are hereby authorized and directed in accordance with 11 U.S.C. § 105(a), 363 and 365 to (a) assume and assign to the Purchaser, effective upon the Closing Date of the Sale, the Assumed Contracts free and clear of all Interests of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

17.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the VSE Debtors shall be relieved from any further liability with

17

respect to the Assumed Contracts after such assignment to and assumption by the Purchaser, except as provided in the Asset Purchase Agreement.

18. All defaults or other obligations of the VSE Debtors under the Assumed Contracts arising or accruing prior to the Petition Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchaser at the Closing Date or as soon thereafter as reasonably practicable. All defaults or other obligations of the VSE Debtors under the Assumed Contracts arising or accruing on or after the Petition Date to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtors at the Closing Date or as soon thereafter as reasonably practicable. The VSE Debtors shall have no liability or obligation to cure Assumed Contract defaults accruing before the Petition Date. The Purchaser shall have no liability or obligation to cure Assumed Contract defaults accruing after the Petition Date but before the Closing Date. Notwithstanding any language in this paragraph to the contrary, the VSE Debtors and the Purchaser shall be responsible for all taxes and tax payments as provided in the VSE APA.

19. The Purchaser may elect to take assignment of certain contracts and leases listed on Schedule 1.1(a)-1 and 1.1(b)-1 of the Asset Purchase Agreement for up to thirty (30) days after the Closing Date of the Sale (the "Post-Closing Assumed Contracts"). Upon designation of

18

such Post-Closing Assumed Contracts by the Purchaser, the Debtors shall file with the Bankruptcy Court and serve a notice on Contract Notice Parties that identifies the Purchaser of the Assets and provides notice that the VSE Debtors are assuming and assigning the Post-Closing Assumed Contracts to the Purchaser.

20.     Each non-Debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Purchaser, or the property of either of them, any default existing as of the date of the Sale Hearing.

**Additional Provisions**

21.     The consideration provided by the Purchaser for the Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

22.     Subject to the terms of the Asset Purchase Agreement, which is hereby approved by this Order, and this Order the VSE Debtors are authorized and directed to pay or cause to be paid to (i) the VSE DIP Lenders the VSE DIP Payoff Amount by wire transfer of immediately available funds to an account designated by the agent to the VSE DIP Lenders in full satisfaction of debt arising under the VSE DIP Facility and (ii) UBS the UBS Payoff Amount by wire transfer of immediately available funds to an account designated by UBS in full

satisfaction of debt arising under the UBS Credit Facility (other than those obligations which survive a termination thereof).

23. Subject to the terms of the Asset Purchase Agreement and this Order, the Debtors are authorized and directed to segregate and deposit into a separate, interest-bearing account the Administrative Intercompany Administrative Expense Claim Amount (the "AgStar Litigation Account"). The AgStar Litigation Account is established for the purpose of satisfying any final, nonappealable judgment or order entered in AgStar's favor resolving the AgStar Litigation. Pending the entry of a final, nonappealable order resolving the AgStar Litigation, the Debtors shall not disburse, use, expend or grant a security interest in or permit or allow any lien on, the AgStar Litigation Account or the amounts deposited therein. Upon the latest to occur of (i) closing of the Sale contemplated by this Order, (ii) payment in full to UBS of the UBS Payoff Amount, and (iii) segregation of the Administrative Intercompany Expense Claim Amount under the terms set forth in this Order, (A) AgStar and UBS shall exchange mutually acceptable releases with respect to any claims each had, has or in the future may have against the other relating to, arising out of or in connection with the Debtors, and any claim UBS had, has or in the future may have against or relating to the Intercompany Administrative Expense Claim Amount, and (B) AgStar shall file in the AgStar Litigation a notice of dismissal with prejudice of UBS from the AgStar Litigation.

20

24.     On March 9, 2009, Fagen, Inc. ("Fagen") filed both
an Objection To Proposed Cure Amounts [Docket No. 794] (the "Fagen
Cure Claim Objection" and an Objection to the Sale Motion [Docket No.
798] (the "Fagen Sale Objection"), the later of which objects to the
disposition of any Sale proceeds pending a final determination of the
validity, extent and priority of Fagen's Mechanic's Lien Claims (as defined
in the Fagen Sale Objection). As adequate protection of Fagen's
Mechanic's Lien Claims, a portion of the Sale proceeds in an amount equal
to $8,854,620.49 ($1,478,497.69 on account of VeraSun Aurora
Corporation, $3,918,244.49 on account of VeraSun Welcome, LLC and
$3,457,878.31 on account of VeraSun Hartley, LLC) shall be placed in a
segregated account (the "Fagen Account"). Pending the entry of a final
non-appealable order resolving Fagen's Mechanic's Lien Claims with
respect to the property of each of VeraSun Aurora Corporation, VeraSun
Welcome, LLC and VeraSun Hartley, LLC, the Debtors shall not use,
expend, grant a security interest in or permit or allow any lien on, or
otherwise encumber the Fagen Account or on the amounts deposited
therein. To the extent any contract identified in the Fagen Cure Claim
Objection constitutes an Assumed Contract under this Order and the cure
amount reflected in the Fagen Cure Claim Objection (and in the case of
VeraSun Hartley, LLC the contract and cure amount scheduled by the
Debtors at Page 24 of Exhibit A at Docket No. 734) is paid in full, or such
lesser amount as the parties may agree or the Court may order, at the

Closing Date, the Debtors shall not be required to segregate any funds with respect to Fagen's Mechanic's Lien Claim arising out of such Assumed Contract. To the extent any contract identified in the Fagen Cure Claim Objection constitutes a post-closing Assumed Contract and the cure amount reflected in the Fagen Cure Claim Objection (and in the case of VeraSun Hartley, LLC the contract and cure amount scheduled by the Debtors at Page 24 of Exhibit A at Docket No. 734) is paid in full, or such lesser amount as the parties may agree or the Court may order, in connection with the assumption and assignment of any such post-closing Assumed Contract, the amount segregated as adequate protection of Fagen's Mechanic's Lien Claims may be reduced in an amount equal to Fagen's Mechanic's Lien Claim arising out of such post-closing Assumed Contract. Similarly, as adequate protection of the asserted mechanic's lien of Todd &Sargent against VeraSun Aurora Corporation, the Debtors agree to segregate $1,640,674.30 pending resolution of such claim.

    25. Certain of Debtors' sureties have filed objections asserting that bonds underlying assets to be sold in connection with or in furtherance of this Order (the "Surety Bonds") are not transferable and seeking that the Debtors segregate the proceeds of any sales to fund obligations underlying the Surety Bonds. The Debtors acknowledge and agree, and in recognition thereof this Court so finds, that the Surety Bonds are not transferable and therefore shall not be transferred in connection with any sale conducted in accordance with this Order. The Debtors and

22

their sureties further agree, and this Court so finds, that, notwithstanding the terms of this Order or any asset purchase agreement relating thereto, nothing herein or therein shall be deemed to alter, modify or limit the rights of the Debtors or their sureties with respect to each other under applicable bankruptcy or non-bankruptcy law as it pertains to the Surety Bonds or the obligations relating thereto.

26. This Order (a) shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Debtors or the Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. The Purchaser and the

23

Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph. All interests of record as of the date of this Order shall be forthwith removed and stricken as against the Assets. All entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, rights, interests and encumbrances against the Assets from their records, official and otherwise.

27. If any person or entity that has filed statements or other documents or agreements evidencing claims, liens, encumbrances, or interests in any of the Assets does not deliver to the Debtors or the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Assets, the Debtors and/or the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Assets.

28. The Debtors will cooperate with the Purchaser and the Purchaser will cooperate with the Debtors, in each case to ensure that the transaction contemplated in the Asset Purchase Agreement is

consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement (including, without limitation, adding such specific assets, to such documents, as may be reasonably requested by the Purchaser pursuant to the terms of the Asset Purchase Agreement).

29.     The Purchaser shall have no liability or responsibility for any liability or other obligation of the VSE Debtors arising under or related to the Assets other than for the Assumed Liabilities. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the VSE Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the VSE Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

30.     Under no circumstances shall the Purchaser be deemed a successor of or to the Debtors for any Interest against or in the VSE Debtors or the Assets of any kind or nature whatsoever. The sale,

transfer, assignment and delivery of the Assets and the Assumed Contracts shall not be subject to any Interest, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors. All persons holding Interests against or in the VSE Debtors or the Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against the Purchaser, its officers, directors, shareholders and professionals, its property, its successors and assigns, or the Assets with respect to any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the VSE Debtors, their estates, officers, directors, shareholders, or the Assets. Following the Closing Date, no holder of an Interest in the VSE Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Assets and the Assumed Contracts based on or related to such Interest, or any actions that the VSE Debtors may take in their Chapter 11 Cases.

31.     This Court shall retain jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser free and clear of Interests, or compel the performance of other obligations owed by the Debtors, (b) compel

26

delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser against (i) claims made related to any of the Excluded Liabilities (as defined in the Asset Purchase Agreement), (ii) any claims of successor liability related to the Assets or Assumed Contracts, or (iii) any claims of Interests asserted in the Debtors or the Assets, of any kind or nature whatsoever.

32. The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected this parties including, but not limited to, all persons asserting Interests in the Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

33. The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent

of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

34.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

35.     Nothing contained in any order entered in the Chapter 11 Cases subsequent to entry of this Order, nor in any chapter 11 plans confirmed in these Chapter 11 Cases, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

36.     This Order shall be effective and enforceable immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h), 6006(d) and any other provision of the Bankruptcy Code or Bankruptcy Rules shall not apply.

37.     The provisions of this Order are nonseverable and mutually dependent.

38.     To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the VSE Debtors to the extent necessary, without further order of the Court (a) to allow Purchaser to give the VSE Debtors any notice

provided for in the Asset Purchase Agreement, and (b) to allow Purchaser to take any and all actions permitted by the Asset Purchase Agreement.

39. To the extent a counter party to an Assumed Contract failed to timely object to a Cure Amount (as defined in the Bid Procedures and Bid Procedures Order), such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assumed Contract to which it relates.

40. The Sale shall not be subject to any bulk sales laws.

41. The Debtors and each other person having duties or responsibilities under the Asset Purchase Agreement or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file and record, as appropriate, the Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby, all without further application to, or

29

order of, the Court. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby.

42.     To the extent that any provision of this Order conflicts with the Asset Purchase Agreement, this Order shall control.

Dated: Wilmington, Delaware
       March 30 , 2009

_____
HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE