# Exhibit A

Execution Copy

**PLAN ADMINISTRATOR AGREEMENT**

**BETWEEN**

**VERASUN ENERGY CORPORATION AND ITS AFFILIATED DEBTORS**

**AND**

**KDW RESTRUCTURING & LIQUIDATION SERVICES LLC**

**DATED AS OF DECEMBER 17, 2009**

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS .................................................................................................2

    Section 1.1    Defined Terms .......................................................................2

ARTICLE II ACCEPTANCE; DESIGNATION OF REPRESENTATIVE; AND
OBLIGATION TO PAY CLAIMS .....................................................................3

    Section 2.1    Acceptance ............................................................................3
    Section 2.2    Designation of Representative ..............................................3
    Section 2.3    Payment of Claims ...............................................................3

ARTICLE III OBLIGATIONS OF THE PLAN ADMINISTRATOR .........................................3

    Section 3.1    Establishment and Maintenance of Accounts, Reserves and
Escrows.................................................................................3
    Section 3.2    Disputed Claims Reserve......................................................4
    Section 3.3    Administrative Claims Reserve.............................................5
    Section 3.4    Operating Reserve ................................................................6
    Section 3.5    Litigation Reserve ................................................................6
    Section 3.6    Prepetition Makewhole Claims Reserve................................7
    Section 3.7    Unclaimed Distributions Reserve.........................................7
    Section 3.8    Distributions to Holders of Allowed Claims..........................8
    Section 3.9    Fractional Dollars; De Minimis Distributions .....................10
    Section 3.10   Conversion of Assets to Cash..............................................11
    Section 3.11   Transactions with Related Persons......................................11
    Section 3.12   Investment of Cash..............................................................11
    Section 3.13   Treatment of Accounts........................................................12
    Section 3.14   Use of Assets ......................................................................12
    Section 3.15   Books, Records and Tax Returns .........................................12
    Section 3.16   Reports to be Filed by the Plan Administrator......................12
    Section 3.17   No Other Duties ..................................................................13

ARTICLE IV POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR..........................13

    Section 4.1    Ultimate Authority of Plan Committee................................13
    Section 4.2    Powers of the Plan Administrator........................................13
    Section 4.3    Authority to Object to Claims and Interests and to Settle Disputed
Claims ................................................................................15
    Section 4.4    Employees and Agents.........................................................16
    Section 4.5    Protection of Assets .............................................................16
    Section 4.6    Additional Powers ...............................................................16

ARTICLE V THE PLAN ADMINISTRATOR ....................................................................16

    Section 5.1    Resignation .........................................................................16
    Section 5.2    Termination of Engagement.................................................16

i

Section 5.3     Appointment of Successor Plan Administrator ........................................17
Section 5.4     Continuity ...............................................................................................17
Section 5.5     No Liability for Acts of Successor or Predecessor Plan
                Administrators ........................................................................................18
Section 5.6     Compensation ..........................................................................................18
Section 5.7     Exculpation .............................................................................................19
Section 5.8     Indemnification .......................................................................................19
Section 5.9     No Recourse to Plan Administrator; Limitation of Liability ...................20
Section 5.10    Insurance .................................................................................................20
Section 5.11    Reliance by Plan Administrator ...............................................................20
Section 5.12    Reliance by Persons Dealing with the Plan Administrator ......................21
Section 5.13    No Implied Covenants or Obligations .....................................................21
Section 5.14    Survival of Article V Provisions .............................................................21

ARTICLE VI FINAL DUTIES AND OBLIGATIONS ............................................................21

Section 6.1     Final Duties and Obligations....................................................................21
Section 6.2     No Other Duties or Obligations ...............................................................22

ARTICLE VII MISCELLANEOUS PROVISIONS...................................................................22

Section 7.1     Effectiveness ...........................................................................................22
Section 7.2     Descriptive Headings...............................................................................22
Section 7.3     Integration ...............................................................................................22
Section 7.4     Amendment and Modification ................................................................22
Section 7.5     No Waiver ...............................................................................................22
Section 7.6     Further Assurances ..................................................................................22
Section 7.7     Governing Law.........................................................................................22
Section 7.8     Cumulative Rights and Remedies ............................................................23
Section 7.9     Limitation of Benefits..............................................................................23
Section 7.10    No Bond Required ...................................................................................23
Section 7.11    Counterparts; Effectiveness ....................................................................23
Section 7.12    Severability; Validity ..............................................................................23
Section 7.13    Notices ....................................................................................................23
Section 7.14    Relationship to Plan ................................................................................24
Section 7.15    Retention of Jurisdiction.........................................................................24
Section 7.16    Assignment .............................................................................................24
Section 7.17    Plan Committee .......................................................................................24

## PLAN ADMINISTRATOR AGREEMENT

### PREAMBLE

      This Plan Administrator Agreement (the "Agreement") is made this 17th day of December 2009, by and among VeraSun Energy Corporation ("VeraSun") and its affiliated debtors and debtors in possession (collectively, the "Debtors" or the "Company"), and KDW Restructuring & Liquidation Services LLC (the "Plan Administrator"), not individually, but solely in its capacity as Plan Administrator.  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Joint Plan of Liquidation of VeraSun Energy Corporation and its Affiliated Debtors, dated July 31, 2009, as the same may be further amended by order of the Bankruptcy Court (the "Plan"), and, if not defined herein or in the Plan, in the Bankruptcy Code.  Notwithstanding the date of execution, this Agreement shall only become effective on the Effective Date (as defined in the Plan).

### RECITALS

      WHEREAS, on October 31, 2008, each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

      WHEREAS, on July 31, 2009, the Plan Proponents filed the Plan (Docket No. 1642) with the Bankruptcy Court;

      WHEREAS, on October 23, 2009, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law , and Order Under 11 U.S.C. §§ 1129(a) and Fed. R. Bankr. P. 3020 Confirming the Joint Plan of Liquidation of VeraSun Energy Corporation and Its Affiliated Debtors (Docket No. 1955) confirming the Plan (the "Confirmation Order");

      WHEREAS, pursuant to the Plan, upon the Confirmation Date the VSE Debtors' estates will be substantively consolidated and the ASA Debtors' estates will be substantively consolidated and each Debtor will, on the Effective Date, become a "Reorganized Debtor";

      WHEREAS, under the Plan, the Debtors, including the substantively consolidated Debtors, will continue to exist as the Reorganized Debtors after the Effective Date in accordance with the laws of their respective states of incorporation or organization and pursuant to their respective organizational documents in effect before the Effective Date, as amended under the Plan, for the limited purposes of liquidating all of the assets of their Estates and making Distributions in accordance with the Plan;

      WHEREAS, on the Effective Date, the current directors and officers or managers of the Debtors, as applicable, will be removed, and from and after the Effective Date, the Plan Administrator will serve, as applicable, as the respective Reorganized Debtors' sole officer and director or manager;

      WHEREAS, the Plan provides for a Plan Committee to be formed and constituted on the Effective Date that will have ultimate supervisory authority over the Plan Administrator;

WHEREAS, the Plan provides for the Creditors' Committee to designate the Plan Administrator and appoint the Plan Committee;

WHEREAS, effective on the Effective Date, the Creditors' Committee, having consulted with the Debtors, designates KDW Restructuring & Liquidation Services LLC to serve as Plan Administrator, and KDW Restructuring & Liquidation Services LLC is willing to serve in that capacity on the terms set forth herein and in the Plan; and

WHEREAS, the rights, powers and duties of the Reorganized Debtors under the Plan shall be exercised by the Plan Administrator or its representative, subject to the ultimate authority of the Plan Committee as provided for in the Plan.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.1    Defined Terms.  As used herein, the terms below shall have the following meanings:

(a)    "Agreement" has the meaning set forth in the Preamble.

(b)    "Bankruptcy Code" has the meaning set forth in the Recitals.

(c)    "Bankruptcy Court" has the meaning set forth in the Recitals.

(d)    "Debtors" has the meaning set forth in the Preamble.

(e)    "Final Accounting" has the meaning set forth in Section 4.2(n) hereof.

(f)    "Indemnified Parties" has the meaning set forth in Section 5.6 hereof.

(g)    "Plan" has the meaning set forth in the Preamble.

(h)    "Plan Administrator" has the meaning set forth in the Preamble.

(i)    "Quarterly Distribution Date" has the meaning set forth in the Plan; provided that if any such date shall fall on a Saturday, Sunday or day on which federal banks are not open to do business, then the Quarterly Distribution Date shall occur on the next day which is not a Saturday, Sunday or day on which federal banks are not open to do business.

(j)    "Reserves" has the meaning set forth in Section 3.1(a) hereof.

(k)    "Unclaimed Distributions Reserve" has the meaning set forth in Section 3.7 hereof.

2

(l)    "Underfunded Reserve/Account" means, any of the Reserves or accounts in which there are insufficient funds to pay operating expenses or Allowed Claims which should have been paid from such Reserves or accounts.

(m)    "VeraSun" has the meaning set forth in the Preamble.

## ARTICLE II

## ACCEPTANCE; DESIGNATION OF REPRESENTATIVE; AND OBLIGATION TO PAY CLAIMS

Section 2.1    Acceptance.  Effective as of the Effective Date, (a) the Plan Administrator accepts engagement as the Plan Administrator and agrees to serve as the sole shareholder of each of the Reorganized Debtors; (b) the Plan Administrator agrees to observe and perform all duties and obligations imposed upon the Plan Administrator (as Plan Administrator or sole shareholder of the Reorganized Debtors, as applicable) and, in accordance with Section 2.2 hereof, to observe and perform all duties and obligations imposed upon the sole officer and director of the Reorganized Debtors, under this Agreement, the Plan, applicable orders of the Bankruptcy Court and applicable law.  The Plan Administrator shall be known as the "VeraSun Plan Administrator."

Section 2.2    Designation of Representative.  The Plan Administrator agrees that it will act as the sole officer and director of the Reorganized Debtors and that it shall perform the Plan Administrator's obligations as Plan Administrator.  The Plan Administrator, as the sole officer and director or manager of the Reorganized Debtors, as applicable, shall act for the Reorganized Debtors and exercise such powers in a fiduciary capacity as applicable.

Section 2.3    Payment of Claims.  The Plan Administrator, solely in its capacity as the Plan Administrator, agrees to cause the Reorganized Debtors to pay all Allowed Claims in accordance with the terms and conditions of the Plan, this Agreement and applicable orders of the Bankruptcy Court, including the Confirmation Order.  The Plan Administrator may engage a disbursing agent for the purpose of making such Distributions.

## ARTICLE III

## OBLIGATIONS OF THE PLAN ADMINISTRATOR

Section 3.1    Establishment and Maintenance of Accounts, Reserves and Escrows.

(a)    Initial Establishment of Accounts and Reserves.  Prior to the Distribution Date or as soon thereafter as practicable, the Plan Administrator shall establish the following accounts and reserves (the "Reserves"):

(i)    General Account(s):  One or more general accounts (the "General Account(s)"), (A) into which shall be deposited Cash not required to be deposited into any other account or Reserve described in or contemplated by this

3

Agreement, and (B) from which shall be made all Distributions ("General Distributions") (1) on the Distribution Date, on account of Claims that were Allowed Claims on or before the Effective Date and (2) on each subsequent Quarterly Distribution Date;

        (ii)    <u>Disputed Claims Reserve</u>:  An account, designated as a "disputed claims reserve," as described more fully in Section 3.2 below (the "Disputed Claims Reserve");

        (iii)    <u>Administrative Claims Reserve</u>:  An account, designated as an "administrative claims reserve," as described more fully in Section 3.3 below (the "Administrative Claims Reserve"); and

        (iv)    <u>Operating Reserve</u>:  An account, designated as an "operating reserve," as described more fully in Section 3.4 below (the "Operating Reserve").

        (v)    <u>Litigation Reserve</u>: An account, designated as a "litigation reserve," as more fully described in Section 3.5 below.

        (vi)    <u>Prepetition Makewhole Claims Reserve</u>:  An account, designated as a "prepetition makewhole claims reserve," as more fully described in Section 3.6 below.

        (b)    <u>Subsequent Establishment of Accounts, Reserves and Escrows</u>.  Prior to the Distribution Date, the Plan Administrator (i) shall establish and maintain an Unclaimed Distributions Reserve as defined in Section 3.7 of this Agreement and such additional accounts, reserves and escrows as may be required by applicable law or by order of the Bankruptcy Court and (ii) may establish and maintain such additional accounts, reserves and escrows as it deems necessary or desirable to carry out the provisions of the Plan and this Agreement.

        (c)    <u>Underfunding and Overfunding of Reserves</u>.  To the extent that the provisions of this Agreement require the Plan Administrator to fund an account or Reserve or to transfer Cash to any Underfunded Reserve/Account and there does not exist sufficient Cash to fully fund all Reserves and accounts, the Plan Administrator shall fund the accounts, Reserves and/or the Underfunded Reserve/Accounts in consultation with the Plan Committee.

        Section 3.2    <u>Disputed Claims Reserve</u>.

        (a)    Prior to the Distribution Date and each Quarterly Distribution Date, the Reorganized Debtors, in consultation with the Plan Committee, shall create and fund the Disputed Claims Reserve with an amount of Cash equal to one hundred percent (100%) of Distributions to which Holders of Disputed Claims would be entitled (excluding Disputed Claims in the Administrative Claims Reserve) under the Plan as of such date if such Disputed Claims were Allowed Claims in their Disputed Claim Amount; *provided*, *however*, that the Plan Committee, the Reorganized Debtors or the Plan Administrator may, at any time, file motion(s) pursuant to section 502(c) of the Bankruptcy Code for order(s) estimating and limiting the amount of Cash which shall be deposited in the Disputed Claims Reserve in respect of any

Disputed Claims, with notice and an opportunity to be heard to the affected Holders of such Disputed Claims and the Plan Committee.

(b)     From time to time and in any event on each Quarterly Distribution Date, the Plan Administrator, in consultation with the Plan Committee, shall determine the amount of Cash required to adequately maintain the Disputed Claims Reserve on and after such date and maintain a reserve of Cash in such amount.  If, and to the extent that, after making and giving effect to the determination referred to in the immediately preceding sentence, the Plan Administrator, in consultation with the Plan Committee, determines that the Disputed Claims Reserve (i) contains Cash in an amount in excess of the amount then required to adequately maintain the Disputed Claims Reserve, then at any such time the Plan Administrator shall transfer such surplus Cash, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s), or (ii) does not contain Cash in an amount sufficient to adequately maintain the Disputed Claims Reserve, then at any such time the Plan Administrator shall transfer Cash from any overfunded Reserve or account until the deficit in the Disputed Claims Reserve is eliminated.

(c)     After a final order has been entered, or other final resolution has been reached, with respect to any given Disputed Claim for which Cash was reserved in the Disputed Claims Reserve, the balance, if any, of Cash remaining in the Disputed Claims Reserve on account of such Disputed Claim after making any initial Distribution to which the Holder of such Claim may have become entitled by virtue of such final order or other final resolution shall be transferred, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s).

Section 3.3     Administrative Claims Reserve.

(a)     Prior to the Distribution Date and each Quarterly Distribution Date, the Plan Administrator, in consultation with the Plan Committee, shall create and fund the Administrative Claims Reserve with an amount of Cash equal to the aggregate Disputed Claim Amount of all Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims and Disputed Secured Claims, based on its sole discretion.

(b)     From time to time and in any event on each Quarterly Distribution Date, the Plan Administrator, in consultation with the Plan Committee, shall determine the amount of Cash required to adequately maintain the Administrative Claims Reserve on and after such date and maintain a reserve of Cash in such amount.  If, and to the extent that, after making and giving effect to the determination referred to in the immediately preceding sentence, the Plan Administrator, in consultation with the Plan Committee, determines that the Administrative Claims Reserve (i) contains Cash in an amount in excess of the amount then required to adequately maintain the Administrative Claims Reserve, then at any such time the Plan Administrator shall transfer such surplus Cash, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s), or (ii) does not contain Cash in an amount sufficient to adequately maintain the Administrative Claims Reserve, then at any such time the Plan Administrator shall transfer Cash from any overfunded Reserve or account until the deficit in the Administrative Claims Reserve is eliminated.

5

(c)     After a Final Order has been entered, or other final resolution has been reached, with respect to any given Disputed Claim for which Cash was reserved in the Administrative Claims Reserve, the balance, if any, of Cash remaining in the Administrative Claims Reserve on account of such Disputed Claim after making any initial Distribution to which the Holder of such Claim may have become entitled by virtue of such Final Order or other final resolution shall be transferred, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s).

Section 3.4     Operating Reserve.

(a)     Prior to the Distribution Date, the Plan Administrator shall establish the Operating Reserve and deposit Cash (in such amounts as directed by the Plan Committee) to meet the Reorganized Debtors' obligations and to fund, among other things, the compensation of the Plan Administrator and the expenses of the Plan Administrator, the Plan Committee and the Reorganized Debtors.

(b)     On each Quarterly Distribution Date, the Plan Administrator shall deposit Cash (in such amounts as directed by the Plan Committee) to maintain the Operating Reserve on and after such date. If, and to the extent that, after making and giving effect to the determination referred to in the immediately preceding sentence, the Plan Administrator, in consultation with the Plan Committee, determines that the Operating Reserve contains (i) Cash in excess of the amount required to adequately maintain the Operating Reserve, then the Plan Administrator shall transfer such surplus Cash, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s), or (ii) does not contain Cash in an amount sufficient to adequately maintain the Operating Reserve, then the Plan Administrator shall transfer Cash from any overfunded Reserve or account until the deficit in the Operating Reserve is eliminated.

Section 3.5     Litigation Reserve.

(a)     Prior to the Distribution Date (or as soon thereafter as is practicable) and each Quarterly Distribution Date, the Plan Administrator, in consultation with the Plan Committee, shall create and fund the Litigation Reserve in such amounts and at such times as directed by the Plan Committee to fund the costs and expenses associated with investigating and, as necessary, prosecuting, settling, dismissing or otherwise disposing of any or all of the Litigation Claims; *provided*, *however*, that at no time shall the amount of the Litigation Claims Reserve exceed $100,000; *provided*, *further*, that the Plan Administrator may at any time increase or decrease the amount of the Litigation Claims Reserve with the consent of the Plan Committee.

(b)     From time to time and in any event on each Quarterly Distribution Date, the Plan Administrator, with the consent of the Plan Committee, shall determine the amount of Cash required to adequately maintain the Litigation Reserve on and after such date and maintain a reserve of Cash in such amount.  If, and to the extent that, after making and giving effect to the determination referred to in the immediately preceding sentence, the Plan Administrator, with the consent of the Plan Committee, determines that the Litigation Reserve (i) contains Cash in an amount in excess of the amount then required to adequately maintain the Litigation Reserve, then

6

at any such time the Plan Administrator shall transfer such surplus Cash, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s), or (ii) does not contain Cash in an amount sufficient to adequately maintain the Litigation Reserve, then at any such time the Plan Administrator shall transfer Cash from any overfunded Reserve or account until the deficit in the Litigation Reserve is eliminated.

Section 3.6     Prepetition Makewhole Claims Reserve.

(a)     Prior to the Distribution Date and each Quarterly Distribution Date, the Plan Administrator, in consultation with the Plan Committee, shall create and fund the Prepetition Makewhole Claims Reserve with an amount of Cash equal to the aggregate amount of all Prepetition Makewhole Claims.

(b)     From time to time and in any event on each Quarterly Distribution Date, the Plan Administrator, in consultation with the Plan Committee, shall determine the amount of Cash required to adequately maintain the Prepetition Makewhole Claims Reserve on and after such date and maintain a reserve of Cash in such amount.  If, and to the extent that, after making and giving effect to the determination referred to in the immediately preceding sentence, the Plan Administrator, in consultation with the Plan Committee, determines that the Prepetition Makewhole Claims Reserve (i) contains Cash in an amount in excess of the amount then required to adequately maintain the Prepetition Makewhole Claims Reserve, then at any such time the Plan Administrator shall transfer such surplus Cash, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s), or (ii) does not contain Cash in an amount sufficient to adequately maintain the Prepetition Makewhole Claims Reserve, then at any such time the Plan Administrator shall transfer Cash from any overfunded Reserve or account until the deficit in the Prepetition Makewhole Claims Reserve is eliminated.

(c)     After a Final Order has been entered, or other final resolution has been reached, with respect to any given Disputed Claim for which Cash was reserved in the Prepetition Makewhole Claims Reserve, the balance, if any, of Cash remaining in the Prepetition Makewhole Claims Reserve on account of such Prepetition Makewhole Claim after making any initial Distribution to which the Holder of such Claim may have become entitled by virtue of such final order or other final resolution shall be transferred, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s).

Section 3.7     Unclaimed Distributions Reserve.

(a)     If the Distribution to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, such Distributions shall be deposited in a segregated, interest-bearing account, designated as an "unclaimed distributions reserve" (the "Unclaimed Distributions Reserve"), for the benefit of all such similarly situated persons until such time as a Distribution becomes deliverable or is claimed.

(b)     On each Quarterly Distribution Date, the Disbursing Agent or the Unsecured Note Indenture Trustee, as applicable, shall make all Distributions that have become

7

deliverable or have been claimed since the Distribution Date on the next Quarterly Distribution Date, or as soon as practicable after such Distribution has become deliverable.

(c)    Any Holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed Distribution within six (6) months after the applicable date of Distribution shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined, notwithstanding any federal or state escheat laws to the contrary, from asserting any such claim for an undeliverable or unclaimed Distribution against the Debtors and the Estates, the Reorganized Debtors, the Plan Administrator, the Unsecured Note Indenture Trustee or their property.  In such cases, any Cash in the Unclaimed Distribution Reserve, or held in trust by the Unsecured Note Indenture Trustee, for Distribution on account of such claims for undeliverable or unclaimed Distributions shall be Distributed to the other Holders in the same Class, free of any restrictions thereon.  If any Distribution is returned as undeliverable, the Plan Administrator may, in its discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Plan Administrator deems appropriate, but no Distribution to any Holder shall be made unless and until the Plan Administrator has determined the then-current address of the Holder, at which time the Distribution to such Holder shall be made to the Holder without interest.  Nothing contained in the Plan or this Agreement shall require the Unsecured Note Indenture Trustee and/or any Disbursing Agent, including, but not limited to, the Plan Administrator or the Reorganized Debtors, to attempt to locate any Holder of an Allowed Claim for purposes of making any Distribution under the Plan.

(d)    The Plan Administrator shall deal with voided checks as set forth in Section 8.8 of the Plan.  In addition, requests for the reissuance of any check that becomes null and void pursuant to the Plan shall be made directly to the Plan Administrator by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the date the Distribution become available for Distribution from the Unclaimed Distribution Reserve to the other Holders in the same Class, free and clear of restrictions thereon.  After that date, all Claims in respect of void checks shall be forfeited, discharged, and forever barred.

Section 3.8    Distributions to Holders of Allowed Claims.

(a)    Initial Distributions.  Except as otherwise provided for in the Plan or the Confirmation Order, and subject to the requirements set forth therein, on, or as soon as reasonably practicable after the Distribution Date, the Plan Administrator shall, pursuant to the provisions of the Plan, cause the Reorganized Debtors to make a Distribution of Cash from the General Account to each Holder of an Allowed Claim as of the Effective Date.  The initial percentage Distribution to Holders of Lender Deficiency Claims, Other Deficiency Claims, Guaranty Claims and General Unsecured Claims in each applicable Class shall be determined by the Plan Committee in consultation with the Plan Administrator and shall occur as soon as reasonably practicable after the Effective Date.

(b)    Quarterly Distributions.  The Plan Administrator shall make payments and Distributions from the appropriate Reserves to the Holder of any Disputed Claim that has become an Allowed Claim, on the first Quarterly Distribution Date following the date that such

Disputed Claim becomes an Allowed Claim, in accordance with the Plan and this Agreement. With respect to Disputed Lender Deficiency Claims, Other Deficiency Claims, Guaranty Claims and General Unsecured Claims, such Distribution shall be based upon the cumulative Distributions that would have been made to such Holders under the Plan if such Claim had been Allowed on the Effective Date (with any post-Effective Date interest thereon earned by the Reorganized Debtors) and shall not be limited by the Disputed Claim Amounts previously reserved with respect to such Claim to the extent that additional amounts are available therefor from the Disputed Claims Reserve, but only to the extent that such additional amounts have not yet been distributed to Holders of Allowed General Unsecured Claims, as applicable. Notwithstanding the foregoing, however, the Plan Administrator may make payments and Distributions from the appropriate Reserves to the Holder of any Disputed Claim that has become an Allowed Claim, prior to the first Quarterly Distribution Date following the date that such Disputed Claim becomes an Allowed Claim, provided, that no objection to doing so is received from the Plan Committee.

(c)     Transfers of Claims.  In accordance with Section 8.5 of the Plan, the Plan Administrator shall make Distributions to the Holders of Allowed Claims identified as such as of the Distribution Record Date in the books and records maintained by the Plan Administrator for the purpose of identifying the Holders.  No transfer of a Claim shall be binding on the Plan Administrator unless and until the transfer has been accepted by the Plan Administrator and recorded on the books and records maintained by the Plan Administrator for the purpose of identifying the Holders.

(i)     The Plan Administrator shall not be required to accept any transfer in favor of any transferee who, in the sole discretion of the Plan Administrator, is or might be construed to be ambiguous or create uncertainty as to the Holder of a Claim.  In so doing, the Plan Administrator shall be fully protected and pursuant to section 5.7 of this Agreement incur no liability to any Person or Entity.

(ii)     Until a transfer is in fact accepted and recorded on the books and records maintained by the Plan Administrator for the purpose of identifying the Holders, the Plan Administrator, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make Distributions and send communications to the Holders and in all other respects treat the Holders as though neither of them has notice of any such transfer. In so doing, the Plan Administrator shall be fully protected and pursuant to section 5.7 of this Agreement incur no liability to any purported transferee or any other Person or Entity.

(d)     Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to any Claim, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Plan Administrator shall be entitled, in the Plan Administrator's sole discretion, to refuse to comply with any such conflicting claims or demands.

(i)     In so refusing, the Plan Administrator may elect to make no payment or Distribution with respect to the Claim subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which

9

shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Plan Administrator shall not be or become liable to any of such parties for its refusal to comply with any such conflicting claims or demands, nor shall the Plan Administrator be liable for interest on any funds which it may so withhold.

(ii)    The Plan Administrator shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Plan Administrator, which agreement shall include a complete release of the Plan Administrator. Until the Plan Administrator receives written notice that one of the conditions of the preceding sentence is met, the Plan Administrator may deem and treat as the absolute owner of a Claim for all purposes, including receipt of Distributions and any payments on account thereof for federal and state income tax purposes, the Holder of the Claim identified as such as of the Distribution Record Date in the books and records maintained by the Plan Administrator for the purpose of identifying the Holders.

(iii)    In acting or refraining from acting under and in accordance with this section 3.8(d) of the Agreement, the Plan Administrator shall be fully protected and incur no liability to any purported claimant or any other person or entity pursuant to section 5.7 of this Agreement.

(e)    <u>Withholding From Distributions</u>.  All Distributions shall be made subject to any withholding or reserve required by this Agreement, the Plan or the Confirmation Order. In accordance with Section 8.9 of the Plan, the Plan Administrator may withhold from Distribution to any Holder any and all amounts determined in the Plan Administrator's sole discretion, required to be withheld by any law, regulation, rule, ruling, directive or other governmental requirement.  All distributions under this Agreement shall be net of the actual and reasonable costs of making such distributions.

(f)    <u>Tax Identification Numbers</u>. The Plan Administrator may require any Holder to furnish to the Plan Administrator its social security number or employer or taxpayer identification number as assigned by the IRS.  The Plan Administrator, in its discretion, may condition any Distribution to any Holder on the receipt of such identification number and may suspend Distributions to any Holder that has not provided its federal taxpayer identification number or social security number, as the case may be, after a request is made pursuant to and in accordance with the terms of this Section.

Section 3.9    <u>Fractional Dollars; De Minimis Distributions</u>.  Notwithstanding any other provision of the Plan or this Agreement, (a) neither the Plan Administrator nor the Reorganized Debtors shall be required to make Distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Plan Administrator shall have no obligation to make a Distribution on account of an Allowed Claim from any Reserve or account (i) to any Holder of an Allowed Claim if the aggregate amount of all Distributions authorized to be made from all such Reserves or accounts on the Quarterly Distribution Date in question is less than $250,000, in which case such Distributions shall be deferred to the next Quarterly

Distribution Date, or (ii) to a specific Holder of an Allowed Claim if the amount to be distributed to that Holder on the particular Distribution Date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder.

Section 3.10    Conversion of Assets to Cash.  The Plan Administrator shall sell or otherwise dispose of, and liquidate or convert into Cash, any non-Cash assets of the Estates, if any, in a manner compatible with the best interests of the Holders of Allowed Claims.  The Plan Administrator shall transfer such Cash, first, to any Underfunded Reserve/Account (but only to the extent of any underfunding) and, next, to the General Account(s).

(a)    Abandonment or Other Disposition of Non-Cash Assets.  Notwithstanding the foregoing, but subject to the ultimate supervisory authority of the Plan Committee, if, in the Plan Administrator's reasonable judgment, non-Cash assets cannot be sold in a commercially reasonable manner, or the Plan Administrator believes, in good faith, such property is burdensome to the Reorganized Debtors or has no or inconsequential value to the Reorganized Debtors and the Holders, the Plan Administrator shall have the right, subject to the ultimate supervisory authority of the Plan Committee, to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Plan Committee.

(b)    Exculpation.  Without limitation of Section 5.7 of this Agreement, no Person or Entity shall have a cause of action against the Plan Administrator or any other Exculpated Party (defined below) arising from or related to the disposition of non-Cash assets in accordance with this Section 3.10, except for a Person or Entity that suffers or incurs Losses (defined below) that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have been primarily and directly caused by the willful misconduct or gross negligence of the Plan Administrator or other Indemnified Party.

Section 3.11    Transactions with Related Persons.  Notwithstanding any other provisions of this Agreement, the Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the assets of the Estates to, or contract with on behalf of the Reorganized Debtors, (a) any relative, employee or agent (acting in their individual capacities) of the Plan Administrator or (b) any person of which any employee or agent of the Plan Administrator is an affiliate by reason of being a trustee, director, officer, partner or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares or other equity interest of such persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Plan Committee and the Plan Committee determines that the terms of such transaction are fair and reasonable to the Reorganized Debtors and no less favorable to the Reorganized Debtors than terms available for a comparable transaction with unrelated persons.

(a)    Trading and Business on Own Account.  Nothing in this Section 3.12 shall prohibit the Plan Administrator from engaging in any trade or business on its own account, provided that such activity does not interfere with the Plan Administrator's administration of its rights, responsibilities, and obligations under the Plan and this Agreement.

Section 3.12    Investment of Cash.  The Plan Administrator shall invest the Reorganized Debtors' Cash, including, but not limited to, the Cash held in the Reserves in (a)

11

direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America; (b) short term obligations of the United States Treasury and repurchase agreements fully collateralized by obligations of the United States Treasury, including funds consisting solely or primarily of such obligations and repurchase agreements; (c) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (d) any other investments that may be permissible under (i) section 345 of the Bankruptcy Code or (ii) any order of the Bankruptcy Court entered in the Debtors' Chapter 11 Cases.

(a)     Such investments shall mature in such amounts and at such times as the Plan Administrator, in its sole discretion, shall deem appropriate to provide funds when needed to transfer funds or make payments in accordance with the Plan and the Agreement.

(b)     The interest or other income earned on the investments of the Cash in any given Reserve, general account, or escrow established pursuant to the Agreement, the Plan or order of the Bankruptcy Court shall constitute a part of such Reserve, general account or escrow unless and until transferred or distributed pursuant to the terms of the Plan, the Agreement or order of the Bankruptcy Court.

Section 3.13    Treatment of Accounts.  For purposes of this Agreement, unless otherwise ordered by the Bankruptcy Court, the Plan Administrator may pool for investment purposes any funds which may or which are required to be segregated or placed into separate Reserves, escrows or accounts under the Plan or this Agreement; *provided*, *however*, that the Plan Administrator shall treat such funds as segregated accounts in its books and records. In addition, notwithstanding any requirement that Distributions hereunder to any Holder of an Allowed Claim on the Distribution Date or any Quarterly Distribution Date be made from a specified Reserve, escrow or account, disbursements may be made as a single aggregate disbursement to such Holder of an Allowed Claim; *provided*, *further*, that the Plan Administrator shall treat the funds so distributed as having been distributed from the appropriate Reserve or account in the Plan Administrator's books and records.

Section 3.14    Use of Assets.  All Cash, Stock or other property held or collected by the Plan Administrator shall be used solely for the purposes contemplated by the Plan or this Agreement.

Section 3.15    Books, Records and Tax Returns.  The Plan Administrator shall maintain books and records and prepare and file such tax forms and returns as are required to be filed by the Reorganized Debtors under applicable law.

Section 3.16    Reports to be Filed by the Plan Administrator.  On a semiannual basis, the Plan Administrator shall file with the Bankruptcy Court and deliver to each member of the Plan Committee a report, in form and substance reasonably acceptable to the Plan Committee, summarizing the administration of the Estates and covering the period since the Distribution Date or the immediately preceding Quarterly Distribution Date, as the case may be.

Section 3.17    No Other Duties.  Other than the duties and obligations of the Plan Administrator specifically set forth in the Agreement or under the Plan, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to its engagement hereunder.

# ARTICLE IV

## POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR

Section 4.1    Ultimate Authority of Plan Committee.  The Plan Committee shall have ultimate supervisory authority over the Plan Administrator.  The Plan Administrator shall report to the Plan Committee and the Plan Committee shall have the power to remove the Plan Administrator, with or without cause.  All powers given to the Plan Administrator under this Agreement are subject to the ultimate supervisory authority of the Plan Committee as set forth in this Section 4.1.  In no event shall the Plan Administrator be obligated to take any action (or refrain from taking any action) which it  believes in good faith to be unlawful or inconsistent with its fiduciary duties as the Plan Administrator, sole shareholder, sole officer and/or sole director of the Reorganized Debtors, as applicable.

Section 4.2    Powers of the Plan Administrator.  The Plan Administrator shall have the following specific powers in addition to any powers conferred upon the Plan Administrator by any other section or provision of this Agreement or the Plan; *provided*, *however*, that the enumeration of the following powers shall not be considered in any way to limit or control the power of the Plan Administrator to act as specifically authorized by any other section or provision of this Agreement:

(a)    exercise all power and authority that may be exercised, and taking all proceedings and acts that may be taken, by the sole shareholder of the Reorganized Debtors, including, without limitation, the amendment of the certificate of incorporation and bylaws of the Reorganized Debtors and the dissolution of the Reorganized Debtors; *provided*, *however*, that the Plan Administrator shall not amend the certificate of incorporation of the Reorganized Debtors to change the fundamental purpose of the corporation without first obtaining an order of the Bankruptcy Court after notice to the Plan Committee;

(b)    open and maintain bank accounts on behalf of or in the name of the Reorganized Debtors, and establish, maintain, reevaluate, and adjust the Reserves and other appropriate reserves

(c)    receive, collect, manage, invest, supervise, and protect the Reorganized Debtors' assets, subject to the limitations provided herein;

(d)    liquidate, sell, abandon, or otherwise dispose of the Reorganized Debtors' assets and Distribute any of their proceeds, subject to the limitations provided herein;

(e)    calculate and pay all Distributions to be made under the Plan, this Agreement and other orders of the Bankruptcy Court to Holders of Allowed Claims;

13

(f)  withhold from the amount distributable to any Person or Entity such amount as may be sufficient to pay any tax or other charge which the Plan Administrator has determined, based upon the advice of its agents and/or professionals, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof;

(g)  employ, supervise and compensate Administrator Professionals (from the Operating Reserve) retained to represent the interests of and serve on behalf of the Reorganized Debtors;

(h)  make and file tax and information returns for any of the Debtors or the Reorganized Debtors;

(i)  object to (or allowing and paying) Claims or Interests filed against any of the Debtors' Estates on any basis; *provided that* the Plan Administrator shall consult, in good faith, with the Plan Committee with respect to such objections, allowance and payment as required by the Plan;

(j)  seek estimation of contingent or unliquidated claims under section 502 of the Bankruptcy Code;

(k)  seek determination of tax liability under section 505 of the Bankruptcy Code;

(l)  prosecute, settle, dismiss, abandon, or otherwise dispose of avoidance actions under sections 544, 545, 547, 548, 549 and 553 of the Bankruptcy Code;

(m)  prosecute, settle, dismiss, abandon, or otherwise dispose of turnover actions under sections 542 and 543 of the Bankruptcy Code;

(n)  prosecute, settle, dismiss, abandon, or otherwise dispose of the Litigation Claims;

(o)  prosecute, settle, dismiss or otherwise dispose of the Prepetition Makewhole Claims;

(p)  dissolve and wind up the Reorganized Debtors;

(q)  subject to Section 5.7 of this Agreement, purchase and carry all insurance policies and pay all insurance premiums and costs the Plan Administrator deems reasonably necessary or advisable;

(r)  exercise all powers and rights, and take all actions, contemplated by or provided for in this Agreement;

(s)  administer the Estates until such time as the liquidation or abandonment of the Reorganized Debtors' assets remaining at the Effective Date is complete and rendering a final accounting which shall be presented to the Bankruptcy Court and the

14

Plan Committee for approval and which shall provide for the discharge of the Plan Administrator, upon notice to the United States Trustee and the Plan Committee and such other parties in interest as the Bankruptcy Court may direct (the "Final Accounting"); and

(t)    take any and all other actions necessary or appropriate to implement or consummate the Plan and the provisions of this Agreement.

Section 4.3    <u>Authority to Object to Claims and Interests and to Settle Disputed Claims</u>.

(a)    From and after the Effective Date, the Plan Administrator, on behalf of the Reorganized Debtors, shall be authorized, with respect to those Claims or Interests which are not Allowed pursuant to the Plan or by Court order, (i) to object to any Claims or Interests Filed against any of the Debtors' Estates and (ii) subject to the Plan, pursuant to Fed. R. Bankr. P. 9019(b) and section 105(a) of the Bankruptcy Code, to compromise and settle Disputed Claims, in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements of claims:

(i)    If the proposed amount at which the Disputed Claim is to be Allowed is less than or equal to $500,000 or if the difference between the Scheduled amount of a Disputed Claim and the proposed amount at which the Disputed Claim is to be Allowed is less than $100,000, the Reorganized Debtors and the Plan Administrator shall be authorized and empowered to settle the Disputed Claim and execute necessary documents, including a stipulation of settlement or release, in their sole discretion and without notice to any party, and the Plan Administrator shall have no liability to any party for the reasonableness of such settlement.

(ii)    If the proposed amount at which the Disputed Claim is to be allowed is greater than $500,000 but less than or equal to $10 million or if the difference between the Scheduled amount of a Disputed Claim and the proposed amount at which the Disputed Claim is to be Allowed is equal to or greater than $100,000 but less than $500,000, the Reorganized Debtors and the Plan Administrator shall be authorized and empowered to settle such Disputed Claim and execute necessary documents, including a stipulation of settlement or release, only if the Plan Committee after ten (10) days notice does not object to such proposed settlement.  If the Plan Committee objects to the settlement, the Plan Administrator may seek Bankruptcy Court approval of such settlement.

(iii)    If the proposed amount at which the Disputed Claim  is to be allowed is greater than $10 million, the Reorganized Debtors and the Plan Administrator shall be authorized and empowered to settle the Disputed Claim and execute necessary documents, including a stipulation of settlement or release, only upon receipt of Bankruptcy Court approval of such settlement.

(b)      Notwithstanding anything contained herein, the procedures set forth above shall not apply to Disputed Prepetition Makewhole Claims.  With respect to any such Disputed Prepetition Makewhole Claims, from and after the Effective Date, the Plan Administrator, on behalf of the Reorganized Debtors, shall be authorized to litigate, compromise and settle, pursuant to Fed. R. Bankr. P. 9019(b) and section 105(a) of the Bankruptcy Code, any Disputed Prepetition Makewhole Claims, subject to the ultimate supervisory authority of the Plan Committee as set forth in the Plan.  If the Plan Committee does not consent or objects to the settlement, the Plan Administrator may seek Bankruptcy Court approval of such settlement.

Section 4.4      Employees and Agents.  Subject to the ultimate supervisory authority of the Plan Committee, the Plan Administrator is authorized (a) to elect to appoint, engage, retain and employ any persons as agent, representatives, employees, professionals, or independent contractors in one or more capacities as is reasonably necessary to enable the Plan Administrator to implement this Agreement and the Plan; (b) to pay fees to and to reimburse the expenses of those employees, agents, or independent contractors elected, appointed, engaged, retained, or employed by the Plan Administrator; (c) to indemnify the Plan Administrator's agents, professionals, and employees from and against any loss (including reasonable attorneys' fees) incurred in connection with the implementation and execution of the Plan other than a loss that is found in a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to have been primarily and directly caused by the willful misconduct or gross negligence of the indemnified Person or Entity; and (d) to prescribe the titles, powers and duties, terms of service and other terms and conditions of the election, appointment, engagement, retention, or employment of such persons as are reasonable and appropriate.

Section 4.5      Protection of Assets.  The Plan Administrator is authorized to do and to perform any and all acts necessary or appropriate for the conservation and protection of the Reorganized Debtors' assets, including acts or things necessary or appropriate to maintain assets held pending sale or other disposition or Distribution.

Section 4.6      Additional Powers.  Subject to the ultimate supervisory authority of the Plan Committee, the Plan Administrator is authorized to do all other acts or things not inconsistent with the Plan or this Agreement that the Plan Administrator deems reasonable necessary or desirable with respect to implementing and executing the Plan and this Agreement.

## ARTICLE V

## THE PLAN ADMINISTRATOR

Section 5.1      Resignation.  The Plan Administrator may resign, in its sole discretion, by giving not less than thirty (30) days prior written notice thereof to the Plan Committee.  Such resignation, which shall be applicable to the Plan Administrator in its capacity as Plan Administrator and sole shareholder of the Reorganized Debtors, shall become effective immediately upon the appointment and Bankruptcy Court approval of a successor Plan Administrator in accordance with Section 5.3 hereof.

Section 5.2      Termination of Engagement.  The termination of the engagement of the Plan Administrator hereunder shall occur upon the earlier of:  (a) the approval by the

Bankruptcy Court of the Final Accounting; or (b) upon 5 business days prior written notice of termination by the Plan Committee to the Plan Administrator; *provided, however*, that in the event that any such written notice shall specify that the engagement of the Plan Administrator hereunder is being terminated because the Plan Administrator is in default of its material obligations under this Agreement or is not able to perform such obligations in a manner consistent with the reasonable direction of the Plan Committee, the Plan Administrator shall have 20 business days from the date of its receipt of any such notice to cure any such defaults or inability to perform.  If the Plan Administrator is, in the reasonable belief of the Plan Committee, unable to cure any such defaults or inability to perform within such period, this Agreement will be deemed to have been terminated for cause ("For Cause").  Notwithstanding the foregoing, unless the Bankruptcy Court orders immediate removal of the Plan Administrator upon the termination of such engagement, the Plan Administrator shall continue to serve and be compensated until a successor Plan Administrator is appointed, and such appointment becomes effective, in accordance with Section 5.3 hereof.

Section 5.3    Appointment of Successor Plan Administrator.  In the event of a vacancy by reason of the termination of the Plan Administrator's engagement hereunder or a prospective vacancy by reason of the resignation, death, incompetency, liquidation, or insolvency of the Plan Administrator, the Plan Committee shall appoint a successor Plan Administrator to become and serve as the Plan Administrator and the sole shareholder of the Reorganized Debtors, which appointment shall be effective upon the approval of the Bankruptcy Court after a hearing before the Bankruptcy Court on not less than twenty (20) days notice to (i) parties requesting notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 or (ii) parties designated by the Bankruptcy Court as parties to be noticed following consummation of the Plan.  If, after termination of the Plan Administrator's engagement hereunder or after receiving notice of resignation from the Plan Administrator, the Plan Committee shall fail to seek appointment of a successor Plan Administrator in accordance with the prior sentence, the Plan Administrator may file a motion with the Bankruptcy Court seeking the appointment of a replacement Plan Administrator, and the Bankruptcy Court shall appoint a successor Plan Administrator, which appointment shall be effective as of the entry of the order appointing the successor Plan Administrator.

(a)    Every successor Plan Administrator appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and the retiring Plan Administrator, if any, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Plan Administrator, without any further act, shall (a) become vested with all the rights, powers and duties of the Plan Administrator and (b) become the sole shareholder of the Reorganized Debtors; *provided*, *however*, that no Plan Administrator shall be liable for the acts or omissions of any prior or subsequent Plan Administrator.

Section 5.4    Continuity.  Unless otherwise ordered by the Bankruptcy Court, the termination of the Plan Administrator's engagement hereunder or the resignation, death, incompetency, liquidation, or insolvency of the Plan Administrator shall not operate to invalidate any action theretofore taken by the Plan Administrator.  In event of the termination of the Plan Administrator's engagement hereunder or the resignation, death, incompetency, liquidation, or insolvency of the Plan Administrator, ownership of the sole share of each of the Reorganized

Debtors' common stock held by the Plan Administrator shall pass to the Plan Committee, to be held by the Plan Committee in trust for the benefit of the creditors of the Reorganized Debtors until a successor Plan Administrator is approved by the Bankruptcy Court. Moreover, in any such event, the Plan Administrator shall (a) execute and deliver by the effective date of such termination or resignation such documents, instruments and other writings as may be reasonably requested by the Plan Committee or the Bankruptcy Court to effect the termination of the Plan Administrator's capacity under this Agreement, including, but not limited to, the Plan Administrator's capacity as the sole shareholder of the Reorganized Debtors; and (b) assist and cooperate in effecting the assumption of such Plan Administrator's obligations and functions by a successor Plan Administrator. If for any reason the Plan Administrator fails to execute and deliver the documents described in clause (a) of the preceding sentence, the Plan Committee shall be authorized to obtain an order of the Bankruptcy Court that shall direct the execution and delivery of such documents. The replaced Plan Administrator shall be compensated for services rendered during a transition to a new Plan Administrator. The provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator and all its successors or assigns. The provisions of Article V of this Agreement shall survive the resignation or removal of any Plan Administrator.

Section 5.5    No Liability for Acts of Successor or Predecessor Plan Administrators. Upon the appointment of a successor Plan Administrator, the predecessor Plan Administrator and any director, officer, affiliate, employee, employer, professional, agent or representative of the predecessor Plan Administrator shall have no further liability or responsibility with respect thereto. A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator unless a successor Plan Administrator expressly assumes such responsibility. A predecessor Plan Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Administrator or for any events or occurrences subsequent to the cessation of its role as Plan Administrator.

Section 5.6    Compensation. The Plan Administrator shall receive the following compensation from the Operating Reserve: (i) start-up costs not to exceed $8,000; (ii) $10,000 per month; and (iii) reimbursement of reasonable and necessary expenses, including payment of all fees and expenses of Kelley Drye & Warren LLP incurred in reviewing, revising, negotiating, and executing this Agreement.

(a)    Payment of Monthly Fee. The monthly fee shall be payable beginning on the Effective Date and continuing until the Plan Administrator is discharged. The first monthly fee shall additionally include a pro rata payment for any partial month following the Effective Date and, together with any start-up costs, shall be payable out of the Reorganized Debtors' assets immediately on appointment of the Plan Administrator. The Plan Administrator's monthly fee shall be automatically paid in advance by wire transfer or equivalent electronic means in the Plan Administrator's discretion on the first day of each month.

(b)    Reimbursement of Expenses. Any professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and

18

reimbursement of expenses incurred from the Operating Reserve.  The payment of the fees and expenses of the Plan Administrator and its retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court but shall be subject to review by the Plan Committee; *provided*, *however*, that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

Section 5.7    Exculpation.  Neither the Plan Administrator nor any director, officer, employer, employees, professional, agent, representative, successor, assign, or affiliate of the Plan Administrator (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party or in enforcing this Agreement (including these exculpation provisions), as and when imposed on the Plan Administrator, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Plan Administrator's execution, delivery, and acceptance of or the performance or nonperformance of its obligations under this Agreement, the Plan or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to any Losses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have been primarily and directly caused by the willful misconduct or gross negligence of the Exculpated Party.

(a)    Every act taken or omitted, power exercised or obligation assumed by the Plan Administrator or any other Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised or assumed, as the case may be, by the Plan Administrator or any Exculpated Party acting for and on behalf of the Plan Administrator and not otherwise; *provided, however*, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons' actions or inactions.

Section 5.8    Indemnification.  Subject to the applicable provisions of the Plan, the Reorganized Debtors shall indemnify and hold harmless (i) the Plan Administrator (in its capacity as such and as officer, director, or manager, as applicable, of the Reorganized Debtors) and any director, officer, employee, employer, professional, agent, representative, successor, assign, or affiliate of the Plan Administrator, (ii) such individuals that may serve as officers and directors of the Reorganized Debtors, if any, and (iii) the Administrator Professionals (each, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses (collectively, the "Indemnified Losses"), including but not limited to attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Reorganized Debtors or the implementation or administration of the Plan or this Agreement, other than Indemnified Losses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have been primarily and directly caused by the willful misconduct or gross negligence of the Indemnified Party.

(a)    Satisfaction of any obligation of the Plan Administrator arising pursuant to the terms of this Section shall be payable only from the Reorganized Debtors' assets.  Such right to payment shall be prior and superior to any other rights to receive a distribution of the Reorganized Debtors' assets.

(b)    The Plan Administrator shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis.  Each Indemnified Party hereby undertakes, and the Plan Administrator hereby accepts its undertaking, to repay any and all such amounts so paid by the Plan Administrator if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Agreement.

(c)    The indemnification provisions of this Agreement shall remain available to and be binding upon any former Plan Administrator or the estate of any decedent of the Plan Administrator and shall survive the termination of this Agreement.

Section 5.9    No Recourse to Plan Administrator; Limitation of Liability.  Every Person or other Entity contracting or otherwise dealing with or having any relationship with the Plan Administrator or any Exculpated Party shall have recourse only to the Reorganized Debtors' assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships, and the Plan Administrator and the Exculpated Parties shall not be individually liable therefore.  In no event shall the Plan Administrator be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Plan Administrator has been informed of the likelihood of such loss or damages and regardless of the form of action.  Any liability of the Plan Administrator under this Agreement will be limited to the amount of annual fees paid to the Plan Administrator.  No provision of this Agreement shall require the Plan Administrator to risk, expend, or advance its own funds or otherwise incur any financial liability or potential financial liability on its own account in the performance of its duties or the exercise of its rights under this Agreement.

Section 5.10    Insurance.  The Plan Administrator shall be authorized to obtain all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, and the Reorganized Debtors, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Reorganized Debtors and (ii) the liabilities, duties and obligations of the Plan Administrator and its agents, representatives, employees or independent contractors under this Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Plan Administrator, remain in effect for a reasonable period (not to exceed seven years) after the termination of this Agreement.

Section 5.11    Reliance by Plan Administrator.  The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if it relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the party or parties properly authorized to do so or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, and the Plan

20

Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Plan Administrator may consult with counsel and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator.  The Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Plan Administrator shall not be liable for any error of judgment made in good faith.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

Section 5.12    Reliance by Persons Dealing with the Plan Administrator.  In the absence of actual knowledge to the contrary, any person dealing with the Reorganized Debtors and the Estates shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Estates and the Reorganized Debtors, and shall have no obligation to inquire into the existence of such authority.

Section 5.13    No Implied Covenants or Obligations.  The Plan Administrator shall not be liable except for performance of such duties and obligations as are specifically set forth in the Plan or this Agreement, and no implied covenants or obligations shall be read into the Plan or this Agreement against the Plan Administrator.

Section 5.14    Survival of Article V Provisions.  Without limitation of any other provision of this Agreement, the provisions of this Article V shall survive the termination of this Agreement, the death, resignation, removal, liquidation, dissolution, or replacement of the Plan Administrator, and or the dissolution of the Plan Committee.

## ARTICLE VI

## FINAL DUTIES AND OBLIGATIONS

Section 6.1    Final Duties and Obligations.  Subject to further order of the Bankruptcy Court, as soon as practicable after the Plan Administrator exhausts the assets of the Debtors' Estates by making the final Distribution of Cash under the Plan and this Agreement and has complied with and fulfilled its obligations under the Plan, the Plan Administrator shall, through the use of the Operating Reserve, (a) provide for the retention and storage of the books, records and files that shall have been delivered to or created by the Plan Administrator until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records and files are being stored; (b) file a certification stating that the assets of the Debtors' Estates have been exhausted and final Distributions of Cash have been made under the Plan; and (c) file the necessary documents to effectuate the dissolution of the Reorganized Debtors in accordance with the laws of each applicable state.  Upon the Plan Administrator's exhaustion of the assets of the Debtors' Estates and completion of the actions specified in the preceding

21

sentence, the Plan Administrator's administration of the Plan pursuant to the Plan and this Agreement shall be completed and terminate.

Section 6.2    No Other Duties or Obligations.  Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to Section 6.1 above, the Plan Administrator shall have no further duties or obligations under the Plan, the Confirmation Order, or this Agreement.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

Section 7.1    Effectiveness.  This Agreement shall become effective as of the Effective Date.

Section 7.2    Descriptive Headings.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 7.3    Integration.  This Agreement, the Plan and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants or obligations except as set forth herein, in the Plan and in the Confirmation Order.  This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

Section 7.4    Amendment and Modification.  The Agreement may not be modified, amended, or supplemented except (a) by an instrument executed by (i) the Debtors and the Plan Administrator on or before the Effective Date and (ii) the Plan Committee and the Plan Administrator following the Effective Date or (b) by order of the Bankruptcy Court.

Section 7.5    No Waiver.  No failure by the Plan Administrator or the Plan Committee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

Section 7.6    Further Assurances.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

Section 7.7    Governing Law.  The Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New Yorkor any other jurisdiction.

Section 7.8     Cumulative Rights and Remedies.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

Section 7.9     Limitation of Benefits.  Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Creditors any rights or remedies under or by reason of this Agreement.

Section 7.10     No Bond Required.  Notwithstanding any state law to the contrary, the Plan Administrator (including any successor Plan Administrator) shall be exempt from giving any bond or other security in any jurisdiction.

Section 7.11     Counterparts; Effectiveness.  The Agreement may be executed by facsimile or other electronic means and in counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  The Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

Section 7.12     Severability; Validity.  If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

Section 7.13     Notices.  Any notice or other communication hereunder shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows (or at such other address for such entity as shall be specified by like notice):

(a)     *If to the Plan Administrator or to the Reorganized Debtors, to*:

KDW RESTRUCTURING & LIQUIDATION SERVICES LLC
101 Park Avenue
New York, NY  10178
Telephone:  212-808-7800
Facsimile:  212-808-7897
Attn:   James S. Carr
          James E. Farrah
          James Hunt


and:

Kelley Drye & Warren LLP
333 W. Wacker Dr., Floor 26
Chicago, IL  60606

23

Telephone:  312-857-7070
Facsimile:  312-857-7095
Attn:   Mark W. Page

   (b)    *with copies to:*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY  10036
Telephone:  212-872-1000
Facsimile:  212-872-1002
Attn:   Michael Stamer, Esq.
       David Botter, Esq.
       Alexis Freeman, Esq.

Section 7.14   <u>Relationship to Plan</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control; *provided*, *however*, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in section 1127(b) of the Bankruptcy Code) shall control over provisions of the Plan.

Section 7.15   <u>Retention of Jurisdiction</u>.  As provided in Article XIII of the Plan, the Bankruptcy Court shall retain jurisdiction over the Estates and the Reorganized Debtors to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement; *provided*, *however*, that the retention of jurisdiction shall not require the retention or payment of the Plan Administrator or Administrator Professionals to be approved by the Bankruptcy Court.

Section 7.16   <u>Assignment</u>.  Neither this Agreement nor any of the rights, duties or obligations of either of the parties hereto may be assigned without the prior written consent of the other party hereto.

Section 7.17   <u>Plan Committee</u>.  In the event that no one is willing to serve on the Plan Committee or there shall have been no Plan Committee members for a period of thirty (30) consecutive days, then:

   (a)    except as otherwise provided in clause (b) of this Section 7.17, the Plan Administrator may, during such vacancy and thereafter, ignore any reference in the Plan, this Agreement or the Confirmation Order to a Plan Committee, and all references to the Plan Committee's ongoing duties and rights in the Plan, this Agreement and the Confirmation Order will be null and void; or

24

   (b)  the Bankruptcy Court may exercise, during such vacancy and thereafter, for the benefit of Holders of Allowed Claims against the Estates of the Debtors, the powers, rights and privileges afforded to the Plan Committee under Sections 3.12, 4.1, 5.1, 5.2, 5.3, 5.4 and 7.4 of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

VERASUN ENERGY CORPORATION for itself
and on behalf of the Affiliate Debtors

By: _____

Name: Mark Dickey
Title: Senior Vice President, General Counsel
and Secretary

KDW RESTRUCTURING & LIQUIDATION
SERVICES LLC, not individually, but solely in its
capacity as Plan Administrator

By: _____

Name: James S. Carr
Title: Managing Director

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on their behalf by their duly authorized officers as of the date first above written.

VERASUN ENERGY CORPORATION for itself
and on behalf of the Affiliate Debtors


By: _____
Name: Mark Dickey
Title:   Senior Vice President, General Counsel
and Secretary


KDW RESTRUCTURING & LIQUIDATION
SERVICES LLC, not individually, but solely in its
capacity as Plan Administrator


By: _____
Name: James S. Carr
Title:   Managing Director